Filed 4/13/23  Koslow v. Data Ticket, Inc. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| DAVID S. KOSLOW, | |
| Plaintiff and Appellant, | E078092 |
| v. | (Super.Ct.No. CVPS2103087) |
| DATA TICKET, INC., et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Kira L. Klatchko, Judge.

Affirmed.

David S. Koslow, in pro. per., for Plaintiff and Appellant.

Ferruzzo & Ferruzzo, Gregory J. Ferruzzo and Sean E. Morrissey, for Defendants and Respondents.

1

David S. Koslow brought this action against Data Ticket, Inc. (Data Ticket) and Steven A. Napolitano, seeking injunctive relief for their alleged violations of laws regulating lawyer referral services. Koslow moved to disqualify defense counsel, the trial court denied the motion, and Koslow appealed. We affirm the order denying the disqualification motion.

BACKGROUND

Koslow's second amended complaint (SAC) alleges as follows. Data Ticket provides citation processing services to local governments and other entities. It contracted with Cathedral City, California, to process administrative citations issued by the city. The services provided by Data Ticket include administrative hearings at which citizens may contest their citations. In particular, Data Ticket provides hearing officers to preside over those administrative hearings. Napolitano is one of the hearing officers and is an attorney. Data Ticket thus refers Cathedral City to attorneys like Napolitano, but the State Bar of California has not certified Data Ticket as a lawyer referral service, as required by Business and Professions Code section 6155, subdivision (a)(1). (Unlabeled statutory citations refer to the Business and Professions Code.) Moreover, section 6155, subdivision (a)(1), prohibits Napolitano from accepting referrals from an uncertified lawyer referral service like Data Ticket.

The SAC seeks an injunction prohibiting Data Ticket and Napolitano from further alleged violations of section 6155, subdivision (a)(1). (Koslow also brought suit against Cathedral City, the State Bar of California, and individuals allegedly employed by Cathedral City, but those defendants are not parties to this appeal.)

2

Data Ticket and Napolitano are jointly represented in the trial court. Koslow moved to disqualify their counsel on the ground that there was an irremediable conflict of interest between the two defendants, so rules 1.7 and 1.16 of the Rules of Professional Conduct prohibit defendants' joint representation. (Undesignated rule references are to the Rules of Professional Conduct.) Koslow offered evidence that he had filed State Bar complaints against Data Ticket and Napolitano based on the alleged conduct underlying the SAC. He argued that Napolitano had an incentive to help the State Bar in its investigation of Data Ticket and that Napolitano was required by law to cooperate with the State Bar's investigation. Koslow claimed that Napolitano was "a rich source of information" about Data Ticket. According to Koslow, those circumstances gave rise to the irremediable conflict of interest between Napolitano and Data Ticket.

The trial court denied the motion for disqualification. The court ruled that Koslow lacked standing to bring the motion, because he was not a client of defense counsel, did not claim to have ever been a client, did not claim that defense counsel owed him a duty of confidentiality, and did not set forth any other facts to support standing.

DISCUSSION

I. *Motion for Disqualification*

Koslow argues that the trial court erred by denying the disqualification motion. We disagree.

Concurrent or joint representation cases involve the attorney's duty of loyalty to each client. (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1355 (*Great Lakes*).) "'An attorney's duty of loyalty to a client is not one that is capable

3

of being divided . . . .' [Citations.] Joint representation of parties with conflicting interests impairs each client's legitimate expectation of loyalty that his or her attorneys will devote their "'entire energies to [their] client's interests.'"" (*Ibid.*)

"The principle of 'undivided loyalty' is embraced in the rules of professional conduct governing potential and actual conflicts in joint representation cases." (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1355.) Under rule 1.7, a lawyer "shall not . . . represent a client if the representation is directly adverse to another client in the same or a separate matter," unless the lawyer obtains informed written consent from each affected client. (Rule 1.7(a).) Similarly, the lawyer "shall not . . . represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client," unless the lawyer obtains informed written consent from each affected client. (Rule 1.7(b).)

The trial court has inherent authority to disqualify an attorney (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil*)), but "[a] 'standing' requirement is implicit in disqualification motions" (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1356). The moving party must show that the targeted lawyer's representation harms a "legally cognizable interest" of the moving party. (*Id.* at p. 1357.) In cases involving a claimed conflict of interest, the moving party generally has standing if they have or had an attorney-client relationship with the targeted lawyer. (*Id.* at p. 1356.) In the absence of a current or former attorney-client relationship, the movant may rely on some other confidential or fiduciary relationship with the target. (*Ibid.*; DCH Health Services Corp. v. Waite (2002) 95 Cal.App.4th 829,

4

832.) In addition, if "'the ethical breach is "'manifest and glaring'" and so "infects the litigation . . . that it impacts the moving party's interest in a just and lawful determination of [his or] her claims" [citation], a nonclient might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation.'" (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1204.)

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion" (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1143), but whether standing exists is a legal question subject to de novo review (*Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477, 485).

In this case, the trial court did not err by ruling that Koslow had no standing to bring the disqualification motion. Assuming for the sake of argument that defense counsel's joint representation gave rise to a conflict of interest, Koslow's motion involved the duty of loyalty owed to his opponents, Data Ticket and Napolitano. Koslow did not claim to be a former client of defense counsel whose interests would be harmed by the current representation, and he did not claim to have some other confidential or fiduciary relationship with defense counsel that would be harmed. Nor did Koslow claim that defense counsel's purported ethical breach was so egregious that it impacted his interest in a just and lawful determination of his claims. Koslow failed to show any risk of harm to his legally cognizable interests, instead relying entirely on the claimed harm to Data Ticket and Napolitano. Accordingly, he lacked standing to seek disqualification of defense counsel. (*In re Marriage of Murchison* (2016) 245 Cal.App.4th 847, 852

5

[husband had no '"personal stake"' in disqualifying wife's counsel, so he lacked standing to bring disqualification motion].)

Koslow acknowledges that the case law imposes a standing requirement for disqualification motions, but he urges us to abandon the requirement. He argues that the standing requirement prevents the court from protecting parties who are adverse to each other and prevents the court from protecting the integrity of its own judicial process. But parties who have adverse interests and who are harmed by a lawyer's representation may move for disqualification on their own behalf. Koslow does not explain why such parties are incapable of protecting their own interests. Nor does he explain why motions brought by parties with standing are insufficient to protect the integrity of the judicial process. His undeveloped argument does not persuade us to abandon the well-established standing requirement. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties"]; see Tuft et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2021) ¶¶ 4:322.10 to 4:322.11f [discussing numerous cases applying the standing requirement].)

For these reasons, the court did not err by denying Koslow's disqualification motion.

II. *Sanctions Requests and Requests for Judicial Notice*

In their respondents' brief, Data Ticket and Napolitano ask us to impose sanctions on Koslow on our own motion. They assert that Koslow's appeal is frivolous. They have not filed a motion for sanctions, and the time for doing so has passed. (Cal. Rules of

6

Court, rule 8.276(b)(1) [motion for sanctions must be filed no later than 10 days after appellant's reply brief is due].) We decline to excuse Data Ticket and Napolitano's procedurally improper request for sanctions by imposing sanctions on our own motion. (*Symmonds v. Mahoney* (2019) 31 Cal.App.5th 1096, 1114 ["a request for sanctions on appeal must be raised in a separate motion; '[s]anctions cannot be sought in the respondent's brief'"].)

Data Ticket and Napolitano have also asked us to take judicial notice of a letter from the State Bar to Napolitano. The letter states that the State Bar investigated Koslow's complaint against Napolitano, determined that it did not warrant further action, and closed the matter. We deny the request for judicial notice because the letter is irrelevant and unnecessary to our resolution of this appeal. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29 (*County of San Diego*).)

In Koslow's opposition to the request for judicial notice, he requests that we issue an order to show cause why Data Ticket and Napolitano's counsel should not be held in contempt for claimed violations of the Rules of Professional Conduct. Koslow argues that counsel violated the rules by misrepresenting that the State Bar had concluded its proceedings against Napolitano, given that Koslow is seeking review of the State Bar investigator's decision. We decline to issue an order to show cause. The request for judicial notice did not misrepresent anything—it stated that the investigation was closed, attached the letter from the State Bar, and quoted the letter, which does state that "the matter is closed." The letter also states that the "decision to close the matter is without prejudice to further proceedings" under the State Bar's Rules of Procedure, which permit

7

further review.  (Rules Proc. of State Bar, rule 2603(a), (b) [permitting the reopening and review of the "closures of inquiries, investigations and complaints"].)  But the request for judicial notice did not attempt to conceal that part of the letter or misrepresent it.

Koslow additionally asks us to take judicial notice of his accusation against Napolitano filed in the Supreme Court.  The accusation seeks review of the State Bar's decision to close his complaint against Napolitano.  We deny his request for judicial notice because the accusation is irrelevant and unnecessary to our resolution of this appeal.  (*County of San Diego*, *supra*, 164 Cal.App.4th at p. 613, fn. 29.)

Finally, in Koslow's reply brief, he asks us to impose sanctions on Data Ticket and Napolitano for statements in their respondents' brief.  Koslow relies on Code of Civil Procedure section 128.7 as authority for those sanctions.  This request is also without merit.  Even if the statements were objectionable, and even if Code of Civil Procedure section 128.7 applied in appellate proceedings—issues we need not decide—Koslow's request would be procedurally improper.  Requests for sanctions under the statute must be brought by separate motion, not in a reply brief.  (Code Civ. Proc., § 128.7, subd. (c)(1).)  Moreover, the moving party must serve the motion before filing it and give the offending party a 21-day safe harbor period during which the offending party may withdraw the challenged papers.  (*Ibid.*)  Koslow has not filed a motion for sanctions or given Data Ticket and Napolitano the mandatory safe harbor period to withdraw their brief.

DISPOSITION

The order denying the motion for disqualification is affirmed.  Data Ticket and Napolitano shall recover their costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.


We concur:

MILLER
            Acting P. J.
CODRINGTON
            J.

9